The STATE of Ohio, Appellant,

v.

FRANKLIN, Appellee.

[Cite as *State v. Franklin* (1993), 86 Ohio App.3d 101.]

Court of Appeals of Ohio,
Hamilton County.

No. C–920264.

Decided Jan. 29, 1993.

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Philip R. Cummings,* Assistant Prosecuting Attorney, for appellant.

*Timothy A. Smith,* for appellee.

GORMAN, Judge.

The state of Ohio appeals the trial court's order granting the motion to suppress a handgun seized from the defendant-appellee, William Franklin. The state's assignment of error challenges the exclusion of the evidence on grounds that the handgun was recovered while Franklin fled during a lawful investigatory stop which did not violate the Fourth Amendment. We have *sua sponte* removed this appeal from our accelerated calendar. For the reasons that follow, we hold that the trial court correctly suppressed evidence which was a fruit of unreasonable search and an unlawful arrest. The judgment is affirmed.

Officer Dewitt Anderson and his partner received a radio run to investigate an anonymous report of "a group of people standing out by a green car shooting." Within two minutes they responded to the reported location and saw a group of "seven or eight individuals" standing by two automobiles, one being a green Nova. Officer Anderson informed the group about the reported gunshots and directed all persons to go to the police cruiser and empty their pockets. Franklin, however, walked away. When Officer Anderson ordered him to return, Franklin replied that the police were violating his constitutional rights. He kept walking. Officer Anderson put out his hand and touched Franklin, stating "that is far enough." Franklin pushed the officer to the ground and ran. During the ensuing foot chase, a handgun was recovered by police when it fell from Franklin's waist or pocket as he jumped a fence. Upon apprehension, Franklin was indicted for carrying a concealed weapon.

The warrantless investigatory stop is a narrowly drawn exception to the probable-cause requirement of the Fourth Amendment. *United States v. Sharpe* (1985), 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605. It allows a police officer without probable cause to stop and briefly detain a person if the officer has

reasonable suspicion based upon specific articulable facts that the suspect is engaged in criminal activity. *United States v. Cortez* (1981), 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621; *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *State v. Andrews* (1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271, 1272–1273.

■ In *Terry*, the United States Supreme Court set forth a dual inquiry for evaluating the reasonableness of a search conducted incident to such an investigative stop:

"[1] whether the officer's action was justified at its inception, and [2] whether it is reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* 392 U.S. at 20, 88 S.Ct. at 1879, 20 L.Ed.2d at 904–905.

The initial inquiry entails a determination of whether, under the totality of the facts available to the officer at the moment of the seizure or the search, "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909, *State v. Andrews, supra,* 57 Ohio St.3d at 87, 565 N.E.2d at 1273. If the investigating officer can point to specific and articulable facts to support his reasonable belief, the intrusion is permitted. *Terry, supra,* 392 U.S. at 21, 88 S.Ct. at 1880, 20 L.Ed.2d at 906.

■ The second inquiry considers the extent of the permissible intrusion. The scope of that intrusion is limited. The search must be reasonably related to the articulable suspicion that prompted the search. When justified in believing that the suspicious individual under investigation is armed and dangerous, the police officer may conduct a "pat-down" search for weapons. *Terry, supra,* at 24, 88 S.Ct. at 1881, 20 L.Ed.2d at 908; *State v. Scott* (1989), 61 Ohio App.3d 391, 572 N.E.2d 819.

■ Officer Anderson had a reasonable basis for stopping the defendant to make inquiry. The police dispatcher's radio broadcast—a presumptively trustworthy source—provided reasonable suspicion of criminal activity even though the information was anonymous. See *State v. Holden* (1985), 23 Ohio App.3d 5, 23 OBR 38, 490 N.E.2d 629. Although he did not discern a weapon at the scene, when the officer observed the green automobile and a group of persons at the specified location, the anonymous report was sufficiently corroborated to justify the investigative stop. *Alabama v. White* (1990), 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301. At that point, the officer's awareness of specific and articulable facts became more than simply a generalized suspicion or inarticulate hunch.

The scope of Officer Anderson's search, however, exceeded the bounds of *Terry* for two reasons. First, Officer Anderson's command to Franklin to empty his pockets was an intrusion which exceeded the limited frisk of the outside of the clothing envisioned under *Terry*. This search converted the investigatory stop to an unlawful arrest without probable cause, as the trial court correctly concluded; *State v. Scott, supra,* 61 Ohio App.3d at 393, 572 N.E.2d at 821; *State v. Linson* (1988), 51 Ohio App.3d 49, 50, 554 N.E.2d 146, 147–148. An invalid warrantless search which precedes the arrest cannot serve as part of its justification for probable cause, and must be excluded as a fruit of an unconstitutional intrusion. *Smith v. Ohio* (1990), 494 U.S. 541, 110 S.Ct. 1288, 108 L.Ed.2d 464. Second, even had he limited the intrusion to a protective search, Officer Anderson did not articulate a basis to justify a *Terry* "pat-down." To the contrary, he testified that he had known the defendant since high school and "was not afraid of him, but was suspicious of him." He said, "I knew he usually does not engage in criminal activity."

The state did not rely upon *California v. Hodari D.* (1991), 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690, redefining a "seizure" as requiring more than a demonstration that the suspect would not feel free to leave due to the show of authority. In expanding on *United States v. Mendenhall* (1980), 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497, the court held that a seizure is equivalent to an arrest and by definition requires "either physical force * * * or submission to the assertion of authority." *Hodari, supra,* 499 U.S. at 626, 111 S.Ct. at 1551, 113 L.Ed.2d at 697. Cf. *State v. Inabnitt* (1991), 76 Ohio App.3d 586, 602 N.E.2d 740 (suspect's vehicle was blocked by a police cruiser and he was subsequently questioned); *State v. Fincher* (1991), 76 Ohio App.3d 721, 603 N.E.2d 329 (the suspect walked away upon seeing police and dropped a bottle containing rocks of crack cocaine which the police recovered). Accordingly, pursuant to *Hodari,* a police officer's order to halt, when not complied with, does not violate the suspect's Fourth Amendment rights. Although Franklin did not submit to the command and fled, here, unlike in *Hodari,* an arrest or seizure was effected by Officer Anderson in laying his hands on Franklin to detain him. *Id.,* 499 U.S. at 624, 111 S.Ct. at 1550, 113 L.Ed.2d at 696–697; *State v. Gaddis* (1973), 35 Ohio App.2d 15, 64 O.O.2d 143, 299 N.E.2d 304.

Therefore, we find no merit in the state's assignment of error and affirm the judgment of the trial court.

*Judgment affirmed.*

DOAN, P.J., and UTZ, J., concur.