[This opinion has been published in *Ohio Official Reports* at 87 Ohio St.3d 564.]

THE STATE EX REL. ANTONUCCI, APPELLANT, *v.* YOUNGSTOWN CITY SCHOOL
DISTRICT BOARD OF EDUCATION, APPELLEE.

[Cite as *State ex rel. Antonucci v. Youngstown City School Dist. Bd. of Edn.*,
2000-Ohio-246.]

*Schools—Salary of long-term substitute teacher—R.C. 3319.10, construed—Court of
appeals' denial of writ of mandamus compelling board of education to provide
relator with all the benefits and privileges provided by R.C. 3319.10 affirmed,
when.*

(No. 99-1173—Submitted December 15, 1999—Decided January 26, 2000.)

APPEAL from the Court of Appeals for Mahoning County, No. 98CA40.

———————————

{¶ 1} In the 1995-1996 school year, appellee, Youngstown City School District Board of Education ("board"), employed appellant, Kathleen Antonucci, as a full-time teacher. During that school year, Antonucci was placed at the BA/7 (Bachelor's Degree with seven years of teaching experience) step of the teachers' salary schedule. At the end of that year, Antonucci was laid off as a part of a reduction in force.

{¶ 2} The board employed Antonucci as a substitute teacher for the 1996-1997 school year. Antonucci was assigned to a specific teaching position to replace a teacher on sick leave, and she held that position for one hundred eighty days during the school year. After Antonucci had been employed as a substitute teacher assigned to the same specific teaching position for sixty consecutive days of service, the school district informed her that she would be paid at the BA/0 (Bachelor's Degree with no years of teaching experience) step for the remainder of the school year and be afforded certain other privileges granted to regular teachers. The board's placement of Antonucci on the BA/0 step on the teachers' salary schedule for the remainder of the 1996-1997 school year comported with the common practice among Ohio school districts, which regard the BA/0 step as the "minimum salary" granted to regular full-time teachers, as well as substitute teachers assigned to one specific teaching position for more than sixty days.

{¶ 3} In December 1997, the board hired Antonucci as a full-time teacher for the 1997-1998 school year and gave her credit for eight years' experience for purposes of the teachers' salary schedule.

{¶ 4} In 1998, Antonucci filed a complaint in the Court of Appeals for Mahoning County for a writ of mandamus to compel the board to provide her with all of the benefits and privileges provided by R.C. 3319.10, including back pay and proper placement on the teachers' salary schedule. Antonucci claimed that she should have been paid at the BA/8 salary step instead of the BA/0 step after she had been assigned as a substitute teacher for more than sixty days of service during the 1996-1997 school year. She further claimed that she should have been given credit on the salary schedule for nine years of teaching experience when the board hired her as a regular, full-time teacher for the 1997-1998 school year. The parties subsequently filed motions for summary judgment. The court of appeals granted the board's motion and denied the writ.

{¶ 5} This cause is now before the court upon an appeal as of right.

_____

*Green, Haines, Sgambati, Murphy & Macala Co., L.P.A.*, and *Steven L. Paulson*, for appellant.

*Ruth, Blair, Roberts, Strasfeld & Lodge, L.P.A.*, and *James E. Roberts*, for appellee.

*Means, Bichimer, Burkholder & Baker Co., L.P.A.*, and *Katherine A. Francis*, urging affirmance for *amicus curiae*, Ohio School Boards Association.

_____

*Per Curiam.*

{¶ 6} Antonucci asserts that the court of appeals erred in denying the writ of mandamus. At issue is whether R.C. 3319.10 confers a legal right for certain substitute teachers to be paid a salary commensurate with that afforded regular teachers pursuant to an adopted teachers' salary schedule based on their level of education and years of experience. Antonucci claims that it does, whereas the board contends that R.C. 3319.10 requires only that it pay these substitute teachers the minimum salary on the adopted teachers' salary schedule.

{¶ 7} R.C. 3319.10 provides that "[a] teacher employed as a substitute with an assignment to one specific teaching position *shall after sixty days of service be granted*

sick leave, visiting days, and *other local privileges granted to regular teachers including a salary not less than the minimum salary on the current adopted salary schedule*." (Emphasis added.)

{¶ 8} Our paramount concern in construing a statute is the legislative intent in its enactment. *Rice v. CertainTeed Corp.* (1999), 84 Ohio St.3d 417, 419, 704 N.E.2d 1217, 1218. We must first look at the statutory language, and words and phrases used shall be read in context and construed according to the rules of grammar and common usage. *Id.*; R.C. 1.42.

{¶ 9} R.C. 3319.10 confers to long-term substitute teachers certain "local privileges" afforded regular teachers, including a "salary not less than the minimum salary on the current adopted salary schedule." Therefore, the plain language of R.C. 3319.10 manifestly requires only that school boards pay such substitute teachers a salary equal to or greater than the minimum salary paid regular teachers, which, according to statewide practice, is at the BA/0 rate. Antonucci was paid at this rate during the period at issue.

{¶ 10} As the court of appeals held, "if the legislature intended for substitute teachers to be credited for their prior experience, the legislature would have so stated that, after 60 days of service in a specific teaching position a substitute is entitled to specifically enumerated fringe benefits and other local privileges granted to regular teachers including a salary *equal* to the salary on the current adopted salary schedule *consistent with the teacher's experience*." (Emphasis *sic*.) The General Assembly has specified that years of service be included in determining teachers' salaries when it has so intended. See R.C. 3317.13 and 3317.14.

{¶ 11} In other words, "[i]t is significant that the General Assembly did not require that such substitutes be paid at a rate equal to that for regular teachers with comparable experience, but only that they be paid at a rate no less than the minimum salary on the current adopted salary schedule for regular teachers." 1976 Ohio Atty. Gen Ops. No. 76-068, at 2-234; see, generally, 1 Baker's Ohio School Law (1998-1999 Ed.) 332, Section 7.21.

{¶ 12} We find the foregoing rationale persuasive. Although R.C. 3319.10 must be construed liberally in favor of substitute teachers, *State ex rel. Dennis v. Hillsdale Loc. School Dist. Bd. of Edn.* (1986), 28 Ohio St.3d 263, 266, 28 OBR 341, 343, 503 N.E.2d

748, 750, there is no need to construe a statute whose meaning is unequivocal, *Nibert v. Ohio Dept. of Rehab. & Corr.* (1998), 84 Ohio St.3d 100, 102, 702 N.E.2d 70, 71. R.C. 3319.10 manifestly permitted the board to pay Antonucci at the BA/0 teachers' salary level for the 1996/1997 school year after she had served more than sixty days in a specific teaching position as a substitute. As noted by the *amicus curiae*, Ohio School Boards Association, a contrary holding would render largely nugatory the succeeding paragraph in R.C. 3319.10, which confers a regular teaching contract on substitute teachers employed for one hundred twenty days or more during a school year and reemployed for or assigned to a specific teaching position for the succeeding school year.

{¶ 13} Based on the foregoing, Antonucci is not entitled to the requested extraordinary relief. Therefore, we affirm the judgment of the court of appeals.[1]

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

_____

_____

1. By so holding, we deny Antonucci's motion to strike the board's merit brief. The evidence establishes that the board served its brief as required by our Rules of Practice and that service was complete on mailing. S.Ct.Prac.R. XIV(2)(B)-(D). Even if Antonucci's counsel had not received a copy of the board's mailed brief, he should have realized from the service of the *amicus curiae* brief, which he admits receiving, that the board had filed a brief and that the reply brief would soon be due. In fact, the *amicus curiae* brief expressly adopted the statements of case and facts of the board's merit brief. Instead, Antonucci waited until the time to file a reply brief had expired to raise the purported failure of service, and we perceive no prejudice from denying Antonucci's motion.